MEMPHIS v. WAITE.

*(Jackson.* April 15, 1899.)

1. DEED. *Construed by Court.*

The question whether the calls of a deed extend to, or stop short of, a river is one of law for the Court, and should not be left to the jury. (*Post, p. 277.*)

2. LIMITATIONS, STATUTE OF. *Not applicable, when.*

The statutory requirement that suit must be brought by the owner within twelve months, where private property is taken possession of for some work of internal improvement, has no application to an action against a city for its use and occupation of certain property as a dumping ground, without any intention of acquiring the property for permanent public use. (*Post, pp. 278, 279.*)

Code construed: § 1867 (S.); § 1572 (M. & V.); § 1348 (T. & S.).

3. ACTION. *Joint, by co-tenants maintainable, when.*

The several owners of lots composing a block may join in an action to recover compensation for the use and occupation from a third person who has occupied the whole block. (*Post, p. 279.*)

4. LICENSE. *Not implied, when.*

A city cannot escape liability for the use and occupation of premises for a dumping ground, at least for the period subsequent to the commencement of a suit against it for the previous use and occupation of the land, upon the ground that the use of the land by the city, without objection from the plaintiff, created an implied gratuitous license from him. (*Post, pp. 279, 280.*)

Case cited: Loague v. Memphis, 7 Lea, 67.

---

FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby County. L. H. ESTES, J.

PERCY & WATKINS for Memphis.

HENRY CRAFT for Waite.

McFARLAND, Sp. J.   This suit was commenced in April, 1898, by Charlotte Waite and Forshay and wife and Floretta Siglar, to recover of the city of Memphis compensation for the use and occupancy of certain property in the city of Memphis known as lots 1, 2, 3, 4, block 1.   The legal title to lots 1 and 2 was in the heirs of Frank Waite, deceased, subject to the homestead of Mrs. Waite, his widow; lot 3 in Charlotte Waite, co-plaintiff herein; lot 4 in Charlotte Waite.   These lots compose one block, having a front of 240 feet on Tennessee Street on the east, and running back to the Mississippi river on the west some 200 feet, and having for its northern boundary Linden Street projected, and on the south Talbot Street projected, neither of these being open abutting this block.   About half way between Tennessee Street on the east and the river on the west there is a precipitous bluff some 75 feet in height, and that part of this block between the bluff and the river is but a few feet above the river.   The city of Memphis owns the block north of this Waite block, extending from Linden to Beal Street on the north, Beal Street being open to the river.   On the southern line of the Waite block the bluff approaches near the river, and there is no access to this low part of the Waite lot except from the north, over the city lot.

In 1882, Mrs. Waite, acting for herself and the other plaintiffs, who were living on the bluff portion of the block, leased the block to one Alley at $75, per month, for several years, and then to O'Neal & Co. for several years at the same rental. Subsequently—and there is considerable discrepancy in the dates given by the witnesses—the ground between the bluff and the river was washed entirely away by the river.

About 1891 the city of Memphis began to use the lower part of the lot for a dumping place, and gradually extended the made land south on the water front. The public also used the same place as a dumping ground. Then the government built a dike at the foot of Talbot Street, extending it out into the river; and thus, through all these agencies, this made land was extended down the whole river front of the Waite property. About 1891 the city established its dump foot near the southwest corner of the lot, and since then, up to the bringing of this suit, has occupied the whole river front of this property, its roadway being about double the width of an ordinary road, and over this road, from the city's lot on the north to the southern line, the dump carts passed constantly. In March, 1895, Mrs. Waite and the other complainants brought their first suit against the city for use and occupation of this block up to that date, and on April 16, 1898, brought this suit for use and occupation for the time between March, 1895, and April, 1898. Both

suits were tried together, and there was a verdict and judgment in the first suit for $21, and in this the second suit for $2,000, and appeal to this Court in the last case.

The first assignment of error is as to this part of the charge of the Court below, as follows: "The Court charges you that the conveyances presented in evidence make plaintiffs the beneficial owners of the property, and as such they were entitled to its reasonable rental value."

Two grounds are alleged why this charge was erroneous. First, that the Court by this charge determined that the plaintiffs did own to the river bank, the defendants claiming that the plaintiffs owned back a certain number of feet, which did not carry this title to the bank of the river, and urged that the Court should have left to the jury to determine whether or not plaintiffs owned to the bank of the river. We do not think this contention sound. It is the duty of the Court, and not the jury, to interpret the muniments of title, and whether, under the deeds to these lots, the title ran to the river or not was a question of law, to be determined by the Court upon its construction of the deeds, and not a matter of fact left with the jury.

The other contention of defendant was that, under the latter clause of this charge, when the Court, after interpreting the deed to the effect that the plaintiffs owned to the river, adds, "and as such owners they were entitled to its reasonable value,"

the Court decides for the jury the question whether plaintiffs were entitled to the rent. This contention would have some force if this was all of the charge of the Court as to whether plaintiff was entitled to recover rent or not. The Court had already specially charged the jury what facts were necessary to be proven by the plaintiffs in order to charge the city with payment of rent. The first charge given on this point is, ''They [the plaintiffs] should satisfy you that they are the owners, and as such are entitled to the rent of the property.'' There was no request by the defendant for the Court to explain more fully what would entitle plaintiffs to collect rents. The charges asked by the defendant on this point were as to what would prevent them from collecting rents, and these were in themselves erroneous.

The next assignment necessary to be noticed is that '' the Court erred in not charging that if the public had been using this roadway for a number of years—say, ten years—the plaintiff could not recover' in a suit for rent and occupancy against the city, and section 1867 (Shannon's Code), providing that where property is taken possession of for some work of internal improvement, suit must be brought in twelve months, is relied on. This objection is answered by the facts and condition of the record. There was no pretense that the city had taken possession of any portion of this lot as a public highway, or intended it as such, and this

statute, as to taking private property for public uses, has no application.

The next assignment is that the Court refused to direct the jury that, if they found for the plaintiff, they must find what amount was due each plaintiff. No principle of law or authority is cited in support of this contention. The pleadings treated this block of land as a whole. There was no proof of any difference of time or manner of occupancy or rental value of the separate parts. The judgment concludes each and all the plaintiffs from further recovery against the city by any of them for this same cause of action. It is immaterial to the city how the plaintiffs apportion the recovery. There is no reason why several owners of lots composing a block may not join in a lease for a joint rental. If the defendant has, by its occupation and use of the whole block, made an implied contract of joint renting, we know of no legal reasons for drawing distinctions between this implied contract and a written lease with same joint obligation, especially where, as here, no sufficient pleas raising the question were filed. This assignment is not well taken.

The next assignment is that the Court refused to charge the jury that if the city built a roadway, and used it for a great number of years without objection from the plaintiffs, and without any demand for rent, then there would be an implied gratuitous license, and the plaintiffs could not recover for use and occupancy. In support of this assign-

ment the case of *Loague* v. *City of Memphis*, 7 Lea, 67, is cited. Under this 7th Lea case the charge asked for by the city on this point would have been error. It would have been the Court determining that merely because the city built the road the defendant had demanded no rent. These facts would in themselves have constituted an implied contract, because, without right to claim rent, says the Court, in the 7th Lea case, page 69, it was for the jury to say whether there was assent or license without intent to charge. The facts of this case take it clearly out of the principles contended for by defendant. In this last suit, the period for which plaintiffs seek to charge the city was from March, 1895, to April, 1898.

In March, 1895, plaintiffs brought this first suit against the city for the previous use and occupation of this land. This was notice that they expected to be paid for its use, and, in the face of this suit, the city continued to occupy, and it is for this occupancy since the plaintiffs sued defendant the first time, this second action was begun. It does not appear reasonable that the city could, after this first suit, demand for rent, and suit therefor, contend that it had a gratuitous license for occupancy without rent.

The next assignments, the eighth and ninth, are, first, that the verdict was excessive, and, second, that there was no evidence to sustain the verdict. It would be sufficient answer to both of these as-

signments to say we differ from learned counsel for defendant, and that there was some evidence upon which the jury might have found to the full extent of this verdict.

Mrs. Waite testifies "that the property is well worth seventy-five dollars per month rental," and that she had rented it for previous years to two other tenants for the same, and two reputable witnesses of the city testify to the latter fact. This verdict of the jury was only at the rate of fifty-four dollars per month.

There were several other reasons ingeniously suggested by plaintiffs' attorney why this was cheap rental for this property, among others that, by reason of the location, surroundings, and physical condition of this property, this was the only dumping point the city had; that the water had, as it were, "cornered" the dumping privilege. Without passing upon these suggestions, it is sufficient to say that there was evidence submitted to the jury upon which, and the fair inferences therefrom, they could have found the verdict they did, and, under the rules of this Court, this verdict cannot be disturbed upon the grounds of these last two assignments of error. We add that if the city has been made to pay high for what it got, it took, without license, the property of the citizen, and held with knowledge that it would have to account, and municipal corporations may not do this any more than private citizens.

The judgment will be affirmed with costs.