MARY H. HORGAN *vs.* TOWN COUNCIL OF TOWN OF JAMESTOWN.

JUNE 29, 1911.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Town Councils. Defining Lines of Highways.*

A town council even in the absence of statutory authority would have the power, without notice, and in such manner as it saw fit, to survey, bound and mark out the lines of an existing highway, and to take action to prevent encroachments and to remove obstructions upon the same.

(2)  *Highways.   Dedication.   Non-User.   Adverse Possession.*

Where a highway has been dedicated to the public, the public right therein is not lost by non-user or by adverse possession however long continued.

(3)  *Accretions to Highways to Navigable Waters.*

Where a highway has been laid out to navigable water, this right of access dedicated to the public will attach itself to any extension of the upland at the end of such highway, whether such be an accretion, arising from natural causes or is caused by human activity either rightly or wrongfully exerted, and such right of access to the sea over the new land will not depend upon whether the addition to the end of the highway grew from the upland outward or began in the water and thence was carried to shore.   Any obstruction of such way by the erection of a wall separating the filled land from the old travelled way would constitute a public nuisance.

(4)  *Accretions to Highways to Navigable Waters.*

Accretions to a public highway terminating at navigable water attach to and form part of the highway.

(5)  *Authority to Fill in From End of Highway to Water.*

Provision in a charter that the company shall have the use and enjoyment of any shore or wharves, convenient and sufficient for the purpose, which belong to the state, did not confer authority upon the company to fill in land, at the end of a highway laid out to navigable water, and to acquire any title or interest in such filled land or to obstruct the way of the public to the water.

(6)  *Construction of Statutes.   Grant of Authority.   Extraordinary Authority Not Inferred from Equivocal Language.*

The grant of extraordinary authority to a corporation tending to great public mischief and the destruction of public rights will not be inferred from general and uncertain language in a charter.

(7)  *Certified Copies of Land Records.   Evidence.*

Certified copies of the public land records of the towns and cities of the state are properly admissible in evidence under the long established practice in this state.   Such rule has become a part of our common law.

(8)  *Evidence.   Recitals in Deeds.*

Where the issue was whether a highway existed between certain lots, recitals in ancient deeds of ancestors of a party to the controversy, in which deeds the grantors bounded the lots upon the highway in question, are competent evidence having strong probative force as to the existence of such a highway.

Appeal from a decree of a town council defining a highway. Heard on exceptions of appellant and overruled.

SWEETLAND, J.    This is an appeal from a decree of the Town Council of the Town of Jamestown bounding and marking out that certain portion of Narragansett Avenue in the Town of Jamestown which extends easterly from Walcott Avenue to the sea.

On the 11th day of September, A. D. 1908, the Town Council of the Town of Jamestown entered the following decree: ".That that portion of Narragansett Avenue extending from Walcott Avenue to the sea be surveyed, bounded and marked out and that Henry B. Tucker, Lewis W. Anthony and Thomas Carr be appointed a committee to survey, bound and mark out said portion of said Narragansett Avenue extending from Walcott Avenue to the sea according to law and that they report to this Council their doings, together with a plat thereof."

The committee duly qualified according to law, and thereafter, on the 28th day of September, A. D. 1908, made its report to the Town Council that it had, pursuant to its warrant, surveyed, bounded and marked out that portion of Narragansett Avenue extending from Walcott Avenue easterly to the sea, as follows: "Starting at a stone bound at the Northeast corner of Narragansett Avenue and Walcott Avenue, so-called; thence across Walcott Avenue in the line of the Northerly side of Narragansett Avenue prolonged 58.7 feet to a stone wall for the point of beginning; thence in said line of said northerly side of said Narragansett Avenue prolonged to the sea or salt water and thence to the harbor line, and bounded Northerly on land of Mary H. Horgan, thence Southerly, bounded Easterly by the sea to the general Southerly line of Narragansett Avenue prolonged easterly to the harbor line; thence Westerly in said general Southerly line of said Narragansett Avenue prolonged to the stone wall at highwater mark and thence in the same direction 163 feet to a point in the westerly face of said stone wall first above mentioned and bounded Southerly, by land of said Mary H. Horgan and thence Northerly along said stone wall to the said Northerly line of Narragansett Avenue prolonged 57.95 feet to the point of beginning.    And it is our opinion that no person has sustained any damage by reason of the sur-

veying, bounding and marking out of said portion of said highway. The annexed is an exact draft or plan of the said highway as surveyed, bounded and marked out by us, and it is hereby made a part hereof."

Notice of the time and place of hearing said report was duly given to the appellant according to law. The appellant appeared and was heard relative thereto and thereupon a decree was entered by the Town Council on the 23rd day of November, A. D. 1909, approving the report of the committee and ordering that "said highway be established and laid open by removing all buildings, fences and other impediments thereon." The appellant appealed from this order and decree of the Town Council to the Superior Court for the County of Newport. Her reasons of appeal in substance were, that it was not necessary that said portion of said Narragansett Avenue should be surveyed, bounded and marked out or established and laid open as a highway; that the proceedings of the Town Council in the premises were irregular and not taken in accordance with the statute; that no damages were awarded to her. The cause was tried in the Superior Court before Mr. Justice Brown sitting with a jury. At the conclusion of the testimony the justice presiding directed the jury to return a verdict for the appellee. The cause is before this court on the appellant's exceptions to the direction of a verdict against her and to certain other rulings of the justice made during the trial.

The appellant excepted to the ruling of the justice presiding, denying the appellant's motion to quash the proceeding. This motion was made on the grounds: (a) The town council did not order a highway to be laid out. (b) It did not adjudge the highway necessary. (c) The final decree of the council established a different way from that ordered to be laid out. (d) The committee made no effort to agree with the appellant as to her damages. (e) It did not appear that the committee appointed to make the layout were "suitable and indifferent" men.

The appellant has regarded this action of the town Council as one to lay out a new highway. If such was its nature, the

proceeding was clearly irregular, open to some if not all of the objections of the appellant, and should have been quashed. It entirely failed to conform to the provisions of Chapter 71, Gen. Laws (1896) now Chapter 82, Gen. Laws, 1909, under which town councils must proceed in laying out highways in the several towns. The claim of the appellee, the. Town Council, however, is that it was not disturbing the appellant in the possession of any land belonging to her; that it was not proceeding to lay out a highway under section 1 of said Chapter 71, Gen. Laws (1896), but to survey, bound and mark out a highway already existing; that it was proceeding under section 28 of said Chapter 71, Gen. Laws, 1896, which provides that "town councils may mark out, relay, widen, straighten, change the location or abandon the whole of or any part of any highway or driftway" except certain highways laid out by the General Assembly; "and thereupon like proceedings shall be had in all respects, so far as the same are applicable, including appeals, as are provided in this chapter in case of taking land and ascertaining damages to the owners of lands taken in laying out or in case of abandonment of highways;" that no land of this appellant was taken by this proceeding and that none of the procedure provided in said chapter in the case of taking lands and ascertaining damages to the owners of lands taken is applicable to the situation of this appellant. If the facts in the case warrant the claim of the Town Council then the appellant is not in a position to make the objections to this proceeding which are contained in the grounds of her motion to quash. Indeed, a Town Council having the management of the prudential affairs and interests of the town and having the care of the highways of the town, in the absence of special statutory authority therefor would have the power, without notice and in such manner as it saw fit to survey, bound and mark out the lines of an existing highway and to take action to prevent encroachments and to remove obstructions upon the same. The vital question in the case, therefore, is whether any of the land included within the lines of the description contained in the report of the committee belonged to this appellant or was all part of an existing highway. We shall consider this question under the next exception.

The appellant excepted to the ruling of the justice presiding, directing the jury to return a verdict in favor of the appellee.

It appears from the testimony given at the trial in the Superior Court that at a meeting of the Proprietors of the Town of Jamestown, held on the 1st day of March, A. D. 1709, it was agreed that the township lots should be laid out "from see to see next to ye farme of Joseph Morey that he has in possession." On the 15th day of March, of the same year a further meeting was held at which it was "voted and ordered that ye maine highway shall be run threw ye township." At a meeting of the proprietors held in April, 1709, a committee was appointed to lay out the township according to the proprietors' agreement. At this meeting it was also voted as follows: "We do further order that ye land that shall remain after every proprietor has his just right laid out ye remainder shall belong to ye proprietors & layd out at ye descreson of ye sd committee which sd land shall run from see to see which ye sd committee shall lay out of that land a highway fore rod wide for ye use of ye country forever and ye remainder of it at ye descretion of ye sd committee."

Pursuant to a vote passed at a meeting of the proprietors held on the first day of May, 1709, a petition was sent to the General Assembly to be held at Newport on the 4th day of May following, in which it is set forth that the proprietors at a meeting held on the 1st day of March ordered and appointed a committee of five men "for to lay out a highway a fore rods wide on ye south line of our township land belonging to us ye above sd proprietors from see to see for ye use of ye country forever." The petitioners pray that the Assembly "take ye matter into their consideration & will order & appoint ye highway forthwith to be laid out by ye committee & survayer so that ye publick benefit of ye Ferrys might be for ye good of her Majesties subjects."

The General Assembly received the petition and directed that a jury be summoned by the sheriff to lay out the highway by the last Monday in said month of May, also that John Moumford surveyor, attend the jury. On July 7th, 1709, the committee

chosen by the proprietors to lay out the highway met and the following appears upon their record: "At a meeting of ye committee chosen by the proprietors of said town for ye ordely setting the highways athist ye Island from see to see and having the survayer Mr. John Moumford there and ye plat of ye Island the highway was laid out of fore rods wide and staked out by ye sd committee."

It further appears by the record of said committee that on October 22, A. D. 1709, the committee met, viewed and approved the plat of John Moumford "of ye highways and severall divisions through and in ye township and commonadge land in sd town of Jamestown," which said work was authorized by the whole committee on July 7th. And thereupon after due consideration it was ordered that "the sd returne be put upon record to stand as a finall determination and decision of all differences and disputes for ye future and that application be thereupon made to ye General Assembly at Warwick the twenty-sixth instant for a further confirmation of ye highways and that they give order for their being laid open for ye benefit of her Majtys subjects." At the same meeting the clerk of the committee is directed to prepare a petition to the Assembly relating to the highway accompanied by the plat thereof by John Moumford. A petition was presented to the General Assembly on the 26th day of October, A. D. 1709, and thereupon it was voted "that all persons concerned is to move of there fences of the Highways by 10th day of Decem$^{r}$ next which if they refuse or neglect to doe accordingly then it shall be lawfull for the wardens or any one of them in sd town to give forth thine ord$^{r}$ or warr$^{t}$ to a Constable or Constables to take sufficient aide if occasion require to lay open the sd Highways and to see all other things complayed with or done according to the purport of sd petition."

February 27th, 1710, the General Assembly passed an act declaring its act of October 26th, 1709, to have been a confirmation of the opening of the two highways, viz.: "the highway from ferry to ferry cross the island stated and confirmed by the propri$^{rs}$ and a jury; Runn by Jno Mumford Survay$^{r}$ and one

other highway that extends through sd Island down to the beach att the head of Mackrell Cove."

From these records it is established that in 1709 a highway was laid out of the width of four rods, running across the town of Jamestown from east to west, from sea to sea; and that it was laid out across the land which the proprietors of the town held in common. This highway became known as Ferry Road, connecting the ferry to Newport with the one to the main land on the west. It was afterwards named Narragansett Avenue. It still remains the principal highway of the town across the island of Conanicut.

According to the testimony of old residents of Jamestown up to about thirty or thirty-five years ago, at the easterly end of Narragansett Avenue, the travelled way terminated at the top of a sloping bank elevated a few feet above the beach on the south side of Narragansett Avenue. On the north side of the avenue the beach was lower and less precipitous and a cart path led down to the water, by which cart path sand was hauled from the beach. For sixty years, at least, down to the present time a wharf has extended out from the lot immediately to the north of the easterly end of the avenue and another from the lot immediately to the south of the easterly end of the avenue. These lots may be referred to as the wharf lots. Formerly the tide ebbed and flowed between these wharves up to and upon the beach which lay at the foot of the bank at the easterly end of Narragansett Avenue. Fishermen and other boatmen landed their boats and hauled them up there; and the town and the public drew sand from this beach up the cart path to the level of the travelled way on Narragansett Avenue. These wharves and the wharf lots are now owned by this appellant. About thirty-five years ago an ancestor in title of the appellant, as to both lots and wharves, one William H. Knowles, built a bulk-head some distance out in the water, below low-water mark, between and connecting the said wharves. Upon the land side of this bulkhead the said Knowles and members of his family deposited ashes from steamboats using said wharves; they also carted sand and debris and dumped the same into the space

between said wharves, the bulkhead and the bank at the end of
the travelled way of Narragansett Avenue.    Other persons also
dumped rubbish there and in time of storms the washings from .
Narragansett Avenue were carried there.    Finally this space
was entirely filled to a considerable extent by the washings from
the gutter in Narragansett Avenue.

It does not appear that, up to the time of the construction of
the bulkhead by said Knowles, the owners of either the north or
the south wharf lot had made any claim of ownership or right of
possession in the land lying between said wharf lots and east of
the end of the ordinary travelled way in Narragansett Avenue.
Certified copies of the deeds in the appellant's chain of title to
the north wharf lot from 1738 to 1804 were put in evidence.
In 1804 said lot was conveyed to one Thomas Congdon, who in
1806 became the owner of the south wharf lot also.    In the
recitals in each of these deeds the existence of the highway is
recognized and the lot is described, in slightly varying words, as
bounding southerly on the highway leading from ferry to ferry.
Certified copies of the deeds in the appellant's chain of title to the
south wharf lot from 1751 to 1806 were also put in evidence.
In each of these deeds the said lot is described as bounding
northerly upon said highway.    From 1806, when said Thomas
Congdon became the owner of both lots, till 1871 when both lots
were conveyed to said William H. Knowles, the said lots were
described in all instruments of conveyance as bounding south-
erly and northerly respectively upon said highway.    The
last deed in the appellant's chain of title is that of Charles
G. Knowles et al. to Mary H. Horgan, the appellant, dated
October 29th, 1907.    In this deed, for the first time, the land
between the two wharf lots is included in the description of the
premises conveyed, but the following limitation is made upon
the covenants of the deed:    "But it is expressly understood
and agreed that the existence of any highway over any portion
of the secondly described parcel of land shall not be deemed or
taken to be a breach of any covenant in this deed, either
express or implied, provided, however, that nothing herein
contained shall be construed as an admission that any such

highway in fact exists." Soon after receiving this deed the appellant built a stone wall along the easterly side of Walcott Avenue, which crosses Narragansett Avenue at about the place where the travelled way formerly ended in said Narragansett Avenue as described by the old residents of the town. This wall prevents access from Narragansett Avenue to the filled land which covers the sloping bank, the beach and the land formerly tide-flowed between Walcott Avenue, as it crosses Narragansett Avenue, and the location of the bulkhead built by William H. Knowles.

The appellant claims that the land east of the present east line of Walcott Avenue was never laid out as a highway; that the purpose of the proprietors in laying out the way was to reach the ferry and not the sea; that the witnesses testify that the ferry operated, within their memory, was reached by turning from the end of the travelled way in Narragansett Avenue to the north or the south onto the wharf lots; and that it is plain therefore that the proprietors never intended to lay out Narragansett Avenue as a highway eastward of the present east line of Walcott Avenue. The records relating to the layout of Narragansett Avenue do not warrant such a conclusion. It does not appear what was the exact location of the ferry in 1709, or whether a public ferry existed on the east side of the island at that time. In the records of the proceedings leading up to the layout of this highway it is sometimes spoken of as running from ferry to ferry. We must find, however, from an examination of the whole record that the proprietors clearly intended to, and that in fact they did, lay out this highway from sea to sea along the south line of their common township land which itself extended across the island from sea to sea; and that this was their intention whatever may have been the location of the public ferry at that time, if there was one.

The appellant also contends in support of her position that the title to the land marked out by the said committee as a part of Narragansett Avenue is in her and was in her grantor by reason of the action of William H. Knowles in building the bulkhead and filling in the area between the wharves; and that

the land so marked out is not a part of Narragansett Avenue. She regards it as important that the filling was commenced at the bulkhead and proceeded towards the land. It is not clear from the testimony what proportion of the filling was first made at the bulkhead and advanced towards the shore and what part was an extension of the upland towards the bulkhead. In our opinion that is an immaterial consideration. We (2) have already decided that Narragansett Avenue was originally laid out to the sea. The way having been dedicated to the public, the public right in said way is not lost by non-user or by adverse possession however long continued. *Simmons* v. *Cornell,* 1 R. I. 519; *Almy* v. *Church,* 18 R. I. 182; *Knowles* (3) v. *Knowles,* 25 R. I. 325. This right of access to navigable water, dedicated to the public, and not lost by mere non-user, will attach itself to any extension of the upland at the end of said highway, whether such is an accretion, arising from natural causes depositing soil at the end of the highway, or was caused by human activity, either rightly or wrongfully exerted. The existence of this right of access to the sea over the new land will not depend upon whether the addition to the end of the highway grew from the upland outward or first began out in the water and thence had been carried to the shore. There was no right in William H. Knowles to cut off the way of the public in said Narragansett Avenue to the sea, and there is none in the appellant. Any obstruction of such way would nullify the dedication by the said proprietors, approved by the General Assembly, and would constitute a public nuisance. Furthermore, the title to the upland of Narragansett Avenue was never in this appellant, her grantor or any of their ancestors in title; we fail to see, therefore, upon what principle of law either she or her grantor could claim any title or interest in the accretion at (4) the end of said avenue. That all accretions to a public highway terminating at navigable water attach to and form part of the highway is amply supported by authority. *Hoboken* v. *Pennsylvania Railroad Company,* 124 U. S. 656; *New Orleans* v. *United States,* 10 Pet. 662; *Jersey City* v. *Morris Canal,* 1 Beas. 547; *Newark Lime Co.* v. *Newark,* 2 McCarter, 64; *Hoboken Land Co.* v. *Hoboken,* 36 N. J. L. 540.

The appellant also sets up a claim of title to the land in question under the Narragansett Bay Company.   The Narragansett Boy Company was a corporation organized under the laws of this state.   See Rhode Island Acts and Resolves, October 1828, p. 39.   This company by its charter was empowered among other things to operate a ferry between Newport and Jamestown.   The appellant has laid particular stress upon certain language of section 15 of the act incorporating said company which in part is as follows:  "SEC. 15.   And be it further enacted that the Company aforesaid, for the purposes aforesaid, shall have the use and enjoyment of any shore or shores, wharf or wharves, convenient and sufficient for the purpose, which belong to the State, and are not in the occupancy of any person or persons entitled by law, and by grant to hold the same."

On June 18th, 1829, Thomas R. Congdon conveyed to this company a portion of the north wharf lot and the wharf connected therewith, bounding the same "southerly by the main road leading from ferry to ferry cross the island of Conanicut." Upon giving up its business this corporation, by deed dated September 16th, 1830, reconveyed this land and wharf to said Congdon.   This deed also conveys to the grantee "all our right, title and interest in all the water in the dock south of the wharf hereinbefore described to the southerly line continued from the south side of the road leading from ferry to ferry across the island of Conanicut, it being the intention of the grantor to reconvey to the said Thomas R. Congdon all the property of every description with the rights, privileges and appurtenances thereto belonging or in any way appertaining to the same which said Company received from said Congdon by his two deeds bearing date the 18th day of June in the year 1829."

It is the contention of the appellant that the power conferred by the General Assembly upon the Narragansett Bay Company was transferred to Congdon and came by mesne conveyances to William H. Knowles; that in building the bulkhead and filling between the wharves Knowles was exercising this power; and that now the use and enjoyment of the land filled by Knowles are in her.

It is unnecessary to consider the question as to the authority of the corporation to transfer to Congdon any right of eminent domain which it might have received from the legislature or the further question as to whether there is any evidence of an intention on the part of the company to make such a transfer. We are strongly of the opinion that the company itself did not have authority under its charter to fill this land and to acquire any title or interest therein, or to obstruct the way of the public to the navigable waters of the bay.   The language of said charter under consideration is too general and uncertain to warrant a construction which would give such extraordinary authority to the corporation tending to great public mischief and the destruction of public rights.   In considering an act of the legislature of New York authorizing owners of lands lying on the East River to construct bulk heads and to fill in front of their land, the court in *People* v. *Lambier*, 5 Denio, 9, said: "In an act, designed chiefly if not exclusively to subserve individual interests, the words used must leave no doubt that the legislature intended to annihilate or abridge an important public right, before a court should put such a construction upon it as would have that effect.   Public burthens are not to be imposed, nor public rights destroyed, by equivocal words or provisions.

"It would be an unusual event, to say the least, for the legislature at any time to cut off access through a public street to an arm of the sea; and it would be truly extraordinary to hold that such would be the effect of general words in an act granting privileges to particular individuals.   We cannot suppose such to have been the intention of the legislature in passing the act of 1836.   Had such been the design it would have been plainly expressed, and not left to be gathered, if at all, from general and equivocal words or phrases."   See also *Hoboken* v. *Pennsylvania Railroad Company*, 124 U. S. 656; *Barclay* v. *Howell's Lessees*, 6 Pet. 498; *Jersey City* v. *Morris Canal*, 1 Beas. 547; *Newark Lime Co.* v. *Newark*, 2 McCarter, 64.

Upon the testimony in the case, a finding of the jury that the appellant had any title or interest in the land in question,

bounded and marked out by the said committee, would have been entirely unwarranted; and Mr. Justice Brown properly directed a verdict in favor of the appellee.

The ruling of said justice denying the appellant's motion to quash was also without error. The action of the town council was a definition of the lines of an existing highway and the procedure prescribed in Chapter 71, Gen. Laws, 1896, for the layout of highways was not applicable to this proceeding.

The appellant also excepted to the ruling of said justice admitting in evidence certified copies of the recorded deeds in the appellant's chain of title to the north and south wharf lots, in which deeds the grantors have bounded the lots respectively granted, upon the highway in question. The appellant objects to the introduction of these deeds upon the grounds that there is no statutory authority for the admission of such evidence; and also that the recognition of the existence of the said highway by her ancestors in title in the wharf lots should not be admitted as admissions contrary to her claim to the land lying between said wharf lots. The appellant takes nothing by these exceptions. Statutory authority is not required for the introduction in evidence of certified copies of the public land records of the towns and cities of the state. The admission of such copies is in accordance with the long established practice of the courts of this state. Such public records are open for inspection and if by chance there should be an error in a certified copy thereof produced in court, such error would be readily noted and corrected. To require that the records themselves should be removed from their place of custody and produced in court would result in great inconvenience to the public. The rule admitting such copies in evidence has become a part of our common law. It is a rule very generally adopted by the courts of the several states and is supported by a long line of authorities. The objection of the appellant to the introduction of these deeds for the purpose of showing a recognition of the existence of the highway in question by her ancestors in title is without force. The issue before the jury was whether a highway existed between the wharf lots to the east of the east line of

Walcott Avenue. The recitals in these ancient deeds executed and recorded from the middle of the eighteenth century till about thirty years ago are competent evidence, having strong probative force, as to the existence of a highway running to the sea and not terminating at some point short of the sea as the appellant contends.

In the case of *Morris* v. *Callanan*, 105 Mass. 129, the court said: "The ancient deed made more than fifty years ago of lands described therein as bounding on an old ditch dividing the inward and outward commons was competent evidence (although neither of the parties to this action claimed under it) in connection with other evidence that the boundary line between those commons was an ancient ditch to prove the location of that line."

In the case of *Randall* v. *Chase*, 133 Mass. 210, the court held that a certified copy of a deed made more than thirty years before was rightfully admitted in evidence for the purpose of proving the location of a way in controversy, even if neither of the parties to the controversy claimed under it or claimed under the parties to it.

All of the appellant's exceptions are overruled and the case is remitted to the Superior Court with direction to enter its decree in confirmation of the said order and decree of the Town Council of the Town of Jamestown.

*Frank F. Nolan, Comstock & Canning, Patrick P. Curran,* for appellant.

*Sheffield, Levy & Harvey,* for appellee.