Argued December 15, 1914, modified January 26, 1915.

## GILLIHAN v. CIELOHA.

(145 Pac. 1061.)

**Navigable Waters—Shore Rights—Accretion—Dredging.**

1. In the absence of assertion of title or possession by the state or the general government, extension of the land of an island along a slough by the government, in dredging another channel, pumping sand into the slough, increasing the height of accretions at certain points, and with the aid of high water widening it at other points, accrues to the shore owner, and will not be treated as an avulsion.

[As to accretion and alluvion, see note in 35 Am. St. Rep. 307.]

**Equity—Issues in Lower Court—Jurisdiction.**

2. Both parties having submitted themselves to the equitable jurisdiction of the court and asked for affirmative relief, and so chosen to litigate their rights in such forum, the court will not seek specious reasons for declining jurisdiction.

**Appeal and Error—Affirmance—Party not Appealing.**

3. The decree giving a too favorable division line to defendant will be affirmed; plaintiffs not appealing.

From Multnomah: HENRY E. MCGINN, Judge.

Department 2.    Statement by MR. JUSTICE McBRIDE.

This is a suit by Presley Gillihan, Vina E. Cole, Edwin Gillihan, Rebecca A. Ramsey, Sarah E. Parmalee and Harriet L. King, against George W. Cieloha to quiet title to certain land claimed by plaintiffs to be an accretion to the Martin Gillihan donation land claim situated on Sauvies Island, in Multnomah County, and practically embracing all the land between the Gillihan donation land claim and Coon Island, which is situated at the mouth of the Willamette River and near its junction with the Columbia. The complaint is in the usual form and alleges that the land is not in the actual possession of any one other than plaintiffs. The answer denies plaintiffs' title and that the land is not in the actual possession of anyone else than plaintiffs, alleges that defendant is the owner thereof, that the land is not in possession of anyone else than defendant, and that plaintiffs are making some unfounded claim thereto, and asks affirmative relief. The cause being put at issue by a reply, it was referred for the taking of testimony, which was done and reported to the court. The court without hearing argument, and without the consent of the defendant, directed John McQuinn, a surveyor of repute, to go upon the land and make an equitable division of the accretions and a report of his action to the court, which he did, disregarding slightly the testimony and surveys introduced in evidence. The court adopted this report as its findings, and from a decree rendered thereon the defendant appeals.

                                                  MODIFIED.


For appellant there was a brief and an oral argument by *Mr. Henry M. Esterly.*

For respondents there was a brief over the names of *Mr. Omar C. Spencer* and *Messrs Carey & Kerr,* with an oral argument by *Mr. Spencer.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

The appointment of McQuinn under the circumstances was irregular, and his report does not pretend to be based upon the testimony, but upon the facts observed by him upon the ground. While in the main it is fair and generally accords with the testimony, we shall treat the case as coming here for trial upon the evidence taken before the referee, and only refer to the report and division made by McQuinn and adopted by the court for convenience in description. The Gillihan claim is an old donation claim located upon the east end of Sauvies Island, which is an island 3 or 4 miles in width and probably from 15 to 18 miles in length. The Willamette River originally debouched into the Columbia through two channels, one about a mile above the most northeasterly corner of Sauvies Island, and the other flowing along the easterly end of the island and separated from the channel first mentioned by Coon Island, which was a long narrow island originally containing about 20 acres, and separated from Sauvies Island by what was known as Coon Island Slough. This slough or channel was originally about 600 feet wide and of equal depth with the more easterly channel, and was navigated by the larger class of vessels. It afforded a means of access to navigation and abundant water frontage for the Gillihan place, and naturally doubled the water frontage of Coon Island, which also had the advantage of frontage on the easterly channel. About 1880 the government built a dike or bulkhead across the head of Coon

Island slough, extending diagonally in a northeasterly direction from a point on the Gillihan place to the southerly end of Coon Island. The dike had the effect at low water of diverting a large portion of the current of the slough into the easterly channel and of rendering the slough unnavigable at low water, although at higher stages vessels were able to pass through the slough and over the dike, which was raised to a height of about four feet above low water. The sand immediately began to accumulate below the dike, and small sand islands or bars began to show themselves above the surface and accretions from both sides of the slough to extend out toward those islands, until they substantially connected Coon Island with Sauvies Island, and the slough was filled up practically to the Columbia River with these accretions. The testimony renders it difficult to ascertain upon which side of the center of the slough the accretions formed soonest. In fact, it seems probable that they formed about as rapidly on one side as on the other. In 1902 a dredger, in deepening the easterly channel, used what had been Coon Island slough as a dumping ground for the sand pumped or dredged by it from the channel. This sand, by reason of the current in the slough having been impeded by the breakwater, was not carried off into the Columbia, but remained in the slough, and so accelerated or hastened the former natural process of filling that it was wholly closed at the upper end to a height of several feet, and was practically filled in to its full length, with the exception of two trifling depressions, where stagnant water probably caused by seepage stood, one near the Sauvies Island side and the other near the Coon Island side of the extinct slough. The testimony as to the

74 Or.—30

division line of the accretions is not clear, and with one exception the witnesses on that subject are parties in interest. Morgan, Gillihan and Reeder have lived practically all their lives in that vicinity; the two former being riparian owners on the slough. Taking their testimony as a whole, and it seems fair, we are of the opinion that the line surveyed by Bonser, and approximated in the partition recommended by McQuinn, comes as near being the true line of division as can be made under the testimony, except that the testimony does not justify the award to plaintiffs of any accretions north of the claim line dividing the donation land claims of Morgan and Gillihan, prolonged east to the dividing line between Gillihan and Morgan, as indicated by McQuinn's map; and the decree is modified in this respect.

1. It is also urged that the sands lying in front of the Gillihan place and above the south end of Coon Island, as it now exists, are not accretions, but are an artificial deposit caused by pumping sand from the dredger, and therefore constitute an avulsion. That the operation of the dredger increased the height of the sands already forming, and that these sands working down stream in high water also contributed to fill up Coon Island slough more or less along its entire length, is undoubtedly true. They were pumped or carried from one channel to the other, not with the intent that they should serve as a filler for the westerly channel, but in order to get rid of them in the east channel. Being left subject to the action of the enormous seasonal high waters prevailing at this point during the freshet season of the Columbia and Willamette Rivers, a portion was worked down and deposited along the slough, attaching itself either to Sauvies or Coon Island and swelling the accretions there, while

still another portion—and the largest—remained at
or near the place deposited and increased the height of
the accretions at that point.  The result of defend-
ant's theory of the case is that, whereas in 1879 plain-
tiffs had a navigable river flowing in front of their
premises, giving them a mile of navigable waterfront,
equity will give practically all the land that now occu-
pies that waterfront to their neighbor, who still has a
mile of waterfront and more land than he originally
purchased.  As against everyone but the state, con-
cerning the rights of which we express no opinion,
plaintiffs are the owners of any artificial extension of
the land caused by dumping or pumping sands against
the bank.  The law zealously guards the right of a
riparian owner to have access to the stream upon
which his land is situated; and while the right of the
government of the state to artifically extend the banks,
as was done in this instance in the interest of com-
merce, is paramount, we are disposed to hold that, in
the absence of any assertion of title or possession by
the state or the general government, such extension
accrues to the shore owner.

2. It is also objected that the defendant has been
shown to be in possession of the disputed strip; that
therefore the court is without jurisdiction; and that
plaintiffs must be relegated to their action at law.
The evidence shows that several years ago defendant
raised a few hills of potatoes on some portion of the
alleged accretions, and that at times he has sown some
grass seed on other portions and planted some willows
to hold the ground from washing away.  These im-
provements were very slight and mostly upon ground
which is given to him by the decree.  The land was un-
fenced and depastured by both the stock of plaintiffs
and defendant.  There was, in fact, no actual posses-

sion by anyone.   In an case, both parties have submitted themselves to the equitable jurisdiction of the court and asked for affirmative relief; and, having chosen to litigate their rights in this forum, we will not seek specious reasons for declining jurisdiction.

3. As before remarked, the division decreed by the Circuit Court does not follow exactly the Bonser line; but as it gives the defendant rather more land than a strict adherence to such line would give him, and as plaintiffs have not appealed, we have concluded to affirm it, with the modification herein indicated.   Neither party shall recover costs in this court.     MODIFIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE EAKIN and MR. BEAN concur.