### No. 19,871.

SAMUEL E. ADAMS, *Appellant,* v. E. K. ROBERSON et al., and THE STATE OF KANSAS, Intervenor, *Appellees.*

#### SYLLABUS BY THE COURT.

1. ISLAND SCHOOL LANDS—*Adjudication of Claims—Procedure—Burden of Proof.* The provision of the statute of 1913 relating to the adjudication of claims to island school land, that a cause brought thereunder shall stand for trial with the settler as plaintiff and the protestant as defendant, and shall be fully tried and determined as other civil cases, implies that the burden of proof rests upon the settler.

2. SAME—*When Open to Settlement as School Lands.* Under the statute as it existed prior to 1915 the only tracts lying within the original banks of navigable rivers that were open to settlement as school land were such as had at one time constituted islands.

3. SAME—*Accretions—Rights of Riparian Owner.* A riparian owner is not prevented from acquiring title by accretion by the fact that the addition to his land is influenced by artificial causes, in which he has had no part.

4. SAME—*Accretions—Artificial Obstructions.* The evidence examined and held not to show conclusively that artificial obstructions in the river caused a sudden and perceptible shifting of the bed of the stream.

5. SCHOOL LANDS—*Judgment against Settler—Ejectment Proper.* Where a proceeding under the statute of 1913, regarding island school land, results in a determination against the settler, the judgment may include an order for his ejection from the premises.

Appeal from Barton district court; DANIEL A. BANTA, judge. Opinion filed February 12, 1916.   Affirmed.

*F. Dumont Smith,* of Hutchinson, *Stephen H. Allen, Otis S. Allen,* and *George S. Allen,* all of Topeka, for the appellant.

*William Osmond,* and *Elrick C. Cole,* both of Great Bend, for appellees E. K. Roberson and W. B. Cornell.

The opinion of the court was delivered by

MASON, J.: Samuel E. Adams settled upon a tract of land lying between the original banks of the Arkansas river, and filed a petition asking to be allowed to purchase it as island school land. E. K. Roberson and W. B. Cornell filed protests, each claiming a portion of the tract as an accretion to patented land of which he was the owner, lying south of the river. The state, intervening by the county attorney, also claimed the title. The papers were certified to the district court in accordance with the statute (Laws 1913, ch. 295, § 3). A trial resulted in a verdict and judgment for Roberson and Cornell, and Adams appeals. The city of Great Bend was also a defendant, but as it has made no appearance here, and no error is urged with specific reference to it, no discussion of its relation to the case is thought necessary.

(1) The appellant complains because the burden of proof was placed upon him. He argues that as the title to the bed of the stream was originally in the state it was incumbent upon Roberson and Cornell, in order to give themselves any standing, to show affirmatively that the tracts which they claimed were accretions. This might be true as between these parties and the state, but no one except Adams is complaining. The statute above cited declares that in the situation here presented the "said cause shall regularly stand for trial with the settler as plaintiff and the protestant as defendant, and the state as intervenor, and the issues of fact and of law, and all claims of the respective parties to such lands, shall be fully tried and determined as other civil cases." It was clearly the purpose of the legislature, in designating the settler as the plaintiff, to cast upon him, as the instigator of the proceedings, the burden of proving facts necessary to his recovery—among others, that the land claimed was of such character as to be open to settlement. This was decided in *Winters v. Myers*, 92 Kan. 414, 140· Pac. 1033.

(2) The plaintiff criticises the instructions as ignoring the fact that the state owns the bed of the river, and in this connection cites the present act making all abandoned beds of navigable streams school lands, and providing for their sale whether they were ever islands or not (Laws 1915, ch. 322). The case

was tried in 1914, and as the law then stood settlement could be made only on lands that had constituted actual islands within twenty years prior to 1913. (Laws 1913, ch. 295, §§ 1, 9; *Means v. Kennedy,* ante, p. 29, 154 Pac. 245.) Moreover, the jury were specifically told that the title to the bed of the river was in the state.

(3) The theory presented by the plaintiff at the trial was that an island had formed in the river bed and grown until it had covered the site in question. The defendant undertook to combat this mainly by showing that there never had been an island at the point of settlement. This was the principal issue to which the evidence on each side was directed, and the conflict was direct and irreconcilable. The court instructed, in substance, that the land belonged to the defendants if it had been gradually added to riparian tracts owned by them, by accretion or reliction; and those processes were clearly defined, no objections being made to the definitions. In 1884 several spans at the south end of a bridge across the river above the land in controversy were filled in with earth, and a dam was run out from the bank a short distance upstream, for the protection of the road so formed. The made land was shown to be largely due to this work. The plaintiff asked an instruction that he was entitled to a verdict if the tract in dispute was formed by the diversion of the stream caused by the fill and dam. This request seems intended to present the contention that a riparian owner can acquire no title to land formed in the bed of a stream if its formation is brought about by artificial causes, although he may have had no part in them. That view has sometimes been taken, but the weight of authority is to the contrary. (1 R. C. L. 233; 1 A. & E. Encycl. of L. 468; I Enc. L. & P. 805; 29 Cyc. 351; 1 Kinney on Irrigation and Water Rights, 2d ed., § 538, p. 928.) We accept the majority doctrine, which we do not understand to be now controverted by the plaintiff; for while a formal objection to the instruction referred to is made in the specification of errors, it has not been pressed in the argument.

(4) The plaintiff does contend, however, that there was no evidence to sustain a finding that the defendants had acquired title by accretion or reliction, for the reason that it conclusively appeared from the evidence of both parties that the immediate effect of the fill and dam was to divert the channel of

the river, so that what had previously been the bed of the stream adjoining the tracts now owned by the defendants became at once tillable land, the ownership of which was in the state, its emergence being due to the process of avulsion. It is true that most of the evidence is consistent with that theory, and much of it has at least an apparent tendency to support it. A number of the witnesses say that the immediate effect of the fill and dam was to change the channel of the river and carry it over to the north bank. The context, however, seems to indicate that in some cases the word "channel" was used as the equivalent of "current," and that changes in the channel were spoken of without any intention of referring to an actual change in the river bed. No instruction was given specifically with regard to avulsion, and none was asked. But the jury were told that for the defendants to have acquired title by accretion or reliction the change must have been gradual and imperceptible. We think the evidence justified a submission to the jury of the question whether title was so acquired, and a finding thereon in favor of the defendants. The witnesses differed greatly not only in recollection but in expression. One of them, whose residence dated back to 1878, said that since that date there had been no channel, in the ordinary stage of the river, east of the bridge (the bridge runs north and south) ; that the channel ran along about the center; that the first year there was no channel at all—no water except during a freshet. Another said that the tract washed in and filled up to the bank first; that "when this approach to the bridge was built it stopped the flow of the water materially; that is, it didn't flow so fast, and the water naturally would settle along the south bank of the river and fill it up"; that the land "was formed by the settling of muddy water after it passed the approach to the bridge. The water naturally flows slower east of that approach, and the sediment of the river would naturally settle there"; that "it settled along the south bank of the river; from the south bank out"; that "when there was any water in the river it was there" [referring to the south side of the river east of the bridge] ; that there was no channel on the south side separate from the main river [implying that there was as a part of the main river]. Another testified that the water went clear to the old [south] bank; that the land was "filled up against the bank out into

the river"; that the dam "threw all the current of the water to the north side." Another said that "the river gradually filled in on the south side and floated away from them" [the defendants' lands]. A witness for the plaintiff testified that the dam drove the stream towards the north, and afterwards the south channel became filled up. When asked whether the Adams tract grew up in the bed of the river or from the south bank he answered that it grew from the south side. The plaintiff's present theory does not square with evidence given in his behalf, that after the dam was built there was a stream forty feet wide between the south bank and the alleged island on which settlement was made, and that the island grew to the south bank.

(5) The judgment not only denied the plaintiff's claim, but also declared the defendants to be the owners of the lands in question, and ordered the plaintiff to be ejected therefrom. The plaintiff contends that in any event the defendants were entitled to no affirmative relief, and in particular that the order of ejectment was unauthorized, because the statute makes no provision for it. As the case was submitted to the jury the verdict is fairly to be regarded as including a finding that the land was formed by accretion to the south bank, and therefore belongs to the defendants. The language of the act of 1913 already quoted—that "the issues of fact and of law, and all claims of the respective parties to such lands, shall be fully tried and determined as in other civil cases"—indicates a purpose to have all controversies between the parties with respect to the land threshed out and disposed of in the proceeding there provided for. The statute in a sense protects a settler in entering and occupying a portion of a tract which may in fact be the lawful property of another occupant—it creates a procedure by which the rights of all parties after such settlement may be speedily litigated. The settlement is really the first step in a proceeding to determine the character of the land, and for that reason is given qualified protection. An adjudication that the land is not open to settlement determines that the plaintiff has no right of possession, and it would be out of harmony with the spirit of the law to allow him to retain it until another judgment should be obtained against him in some other form of action.

The judgment is affirmed.