This action in quo warranto is brought originally in this court under authority of Ohio, ex rel., v. Railway Co., 53 Ohio St. 189, 41 N.E. 205, and State, ex rel. Bettman, Atty.Genl., v. Miami Conservancy Dist., 125 Ohio St. 201,180 N.E. 893, as to the remedy. The Attorney General of Ohio as relator seeks to oust the respondent, Lake-front East Fifty-Fifth Street Corporation, from that portion of its property (known as the Black property) which lies between the existing shore line of Lake Erie and the shore line as it existed in 1898. In brief the relator claims that the land between those shore lines was submerged land prior to 1898 and since then has been filled up by "artificial means and agencies."
The respondent corporation claims that by virtue of a lease upon the adjoining upland for ninety-nine years, renewable forever, it became the owner of the newly made land by accretion.
The right of a littoral owner of land fronting on Lake Erie to wharf out or fill in to the limit of navigability (provided navigation is not interfered with) is discussed in two cases:White v. City of Cleveland, 12 N. P. (N.S.), 225, 21 O. D. (N. P.), 311, affirmed, White v. City of Cleveland, 14 C. C. (N.S.), 369, 23 C. D., 317, which was affirmed without opinion, *Page 10 87 Ohio St. 482, 102 N.E. 1135 (1912); State v. C. P. Rd. Co.,94 Ohio St. 61, 113 N.E. 677, L.R.A. 1917A, 1007 (1916).
Subsequently in 1917 the Legislature enacted the Fleming Act (107 Ohio Laws, 587, Sections 3699a to 3699-9, inclusive, General Code). The provisions of that act were supplemented in 1925 by the Abele Act (111 Ohio Laws, 417, Section 3699-10, General Code).
In 1927 the Federal Government established out in the lake a bulkhead line which runs a short distance from the mainland in litigation here. Any littoral owner may fill up to but not beyond this line without getting a permit from the United States government.
It is a serious question whether all littoral owners may not lawfully fill in to the established bulkhead line to protect and preserve their littoral rights, including the right of navigation; but it will not be necessary to pass upon that and kindred questions if the respondent has title to the disputed land by accretion. What then is the state of the law as to accretion? Section 3699a, General Code (part of the Fleming Act), provides:
"It is hereby declared that the waters of Lake Erie within the boundaries of the state together with the soil beneath and their contents do now and have always, since the organization of the state of Ohio, belonged to the state of Ohio as proprietor in trust for the people of the state of Ohio, subject to the powers of the United States Government, the public rights of navigation and fishery and further subject only to the right of littoral owners while said waters remain in their natural state to make reasonable use of the waters in front of or flowing past their lands, and the rights and liabilities of littoral owners while said waters remain in their natural state of accretion, erosion and avulsion. Any artificial encroachments by public or private littoral owners, whether in the *Page 11 
form of wharves, piers, fills or otherwise beyond the natural shore line of said waters not expressly authorized by the General Assembly, acting within its powers, shall not be considered as having prejudiced the rights of the public in such domain. Nothing herein contained shall be held to limit the right of the state to control, improve or place aids to navigation in the other navigable waters of the state or the territory formerly covered thereby."
Respondent maintains that that section and other provisions of the Fleming Act are merely declaratory of the common law and that the purpose of the act "was to delegate the common-law rights of the state to the municipalities which are located on the shores of Lake Erie." However that may be, it suffices to say that there is nothing in the Fleming Act or even the Abele Act that alters the common-law doctrine of accretion. Just as a littoral owner may lose land by erosion he may gain it by accretion. Courts generally hold that the littoral owner as a protection to his right of access to the water is entitled to land added to his own gradually and imperceptibly through the action of waves and currents. Niehaus v. Shepherd, 26 Ohio St. 40; County of St. Clair v. Lovingston, 90 U.S. (23 Wall.), 46, 68, 23 L.Ed., 59, 64; New Orleans v. UnitedStates, 35 U.S. (10 Pet.), 662, 9 L.Ed., 573; Rex v.Yarborough, 1 Dow. C. App. Cas., 178; St. Louis v. Rutz,138 U.S. 226, 34 L. Ed., 941, 11 S.Ct., 337; 1 Farnham, Water and Water Rights, 320, Section 69; 4 Tiffany on Real Property (3 Ed.), 613, Section 1219; 5 Thompson on Real Property (Perm. Ed.), 294, Section 2546.
If the land between the shore lines of 1898 and 1938 was formed gradually and imperceptibly by action of the waves and currents of Lake Erie, respondent has an estate therein by virtue of its leasehold. The situation would not be altered because adjoining littoral *Page 12 
owners had extended the shore line out by dumping or wharfing so as to form a pocket which would be more readily filled by accretion. Action by third persons in which the owner does not participate does not impair the latter's littoral rights.County of St. Clair v. Lovingston, supra; Burke v.Commonwealth, 283 Mass. 63, 186 N.E. 277; Adams v. Roberson,97 Kan. 198, 155 P. 22; Whyte v. City of St. Louis,153 Mo., 80, 54 S.W. 478.
In the instant case it appears that such a pocket had been formed and the next inquiry is whether the evidence shows that the pocket was filled artificially or by accretion. The newly made land is about 1000 feet from north to south and 700 feet from east to west and has been estimated to contain 200,000 cubic yards of drifted sand and soil. After the land had been formed by action of the lake plus such filling or dumping as there may have been, about 40,000 cubic yards of dirt were hauled and dumped upon the newly made upland — but not a particle of the dirt so hauled was put into the lake. Thus this newly formed land was made valuable and now the state would take it without recompense. That such land — vast as it is in extent — was almost wholly formed by accretion is beyond cavil. It is true that there was here some dumping into the lake in the stretch of years, but as to the amount there is a conflict in the evidence. It appears by the greater weight of the evidence that the extent to which the almost constant accretion during all those years was aided by dumping or filling at this point was so trifling that the law will not take notice of it. De minimis non curat lex. For years at a time there was no dumping here at all. What did take place was occasional and comparatively inconsiderable. Such limited and inconsequential additions to the accretion cannot change its true character. Accretion it was and accretion it remains. *Page 13 
Since the land was formed by accretion, the state has no interest in it and the petition will be dismissed.
Petition dismissed.
WEYGANDT, C.J., DAY, ZIMMERMAN, MATTHIAS and HART, JJ., concur.