**NORDALE et al. v. WAXBERG et al.**

No. 5824.

United States District Court, Alaska
Fourth Division, Fairbanks.

June 13, 1949.

Maurice T. Johnson, of Fairbanks, Alaska, for plaintiffs.

Warren A. Taylor, of Fairbanks, Alaska, for defendants.

PRATT, District Judge.

The plaintiffs and their predecessors in interest were riparian owners of land upon

the Chena River, which, in May, 1903, formed the North boundary of the Town of Fairbanks, Alaska, as well as the North boundary of plaintiffs' lot. Between 1903 and March 13, 1948, land formed onto plaintiffs' land along the river bank until the river was pushed Northward about two hundred feet. The plaintiffs claim this land as theirs, as being alluvion formed by accretion from deposits of the water gradually and imperceptibly. The defendants have taken possession of a part of said alluvion under the claim that it was formed by artificial means, to wit, by filling in, and that therefore it was open to entry by defendants. This is an action in the nature of ejectment.

The evidence shows that between 1903 and 1948, there was a gradual and imperceptible deposit of silt along the river bank adjacent to plaintiffs' lot until there was a piece of dry land between the side lines of plaintiffs' lot extended Northward, and the new river bank approximately two hundred feet Northward from the original North boundary.

The defendants dug three pits in the alluvion within approximately 75 feet of the original North boundary line of plaintiffs' lot. These pits were two, four and six feet in depth respectively, and approximately six feet long by four feet wide. They showed that some tin cans and other debris were mixed in with the alluvion as it had built up. The amount of such debris was an infinitesimal percent of the amount of alluvion and there was nothing in it to show that it had had any effect upon the forming of the alluvion. The evidence clearly showed that plaintiffs and their predecessors in interest had known nothing about the deposit of such debris, and that it had been done entirely by third persons.

By Act approved June 6, 1900, Congress, in making laws for the government of Alaska, provided that "So much of the common law as is applicable and not inconsistent with the Constitution of the United States or with any law passed or to be passed by the Congress is adopted and declared to be law within the district of Alaska". 31 Stat. 552, Sec. 367; Sec. 2-1-2, Alaska Compiled Laws Annotated, 1949. This section was amended in 1933 subjecting the common law to acts passed by the Territorial Legislature, but otherwise it remains unchanged today.

The great weight of authority is that the law respecting the acquisition of title by accretion is independent of the law respecting the title to soil covered by water. Shively v. Bowlby, 152 U.S. 1, 35, 14 S.Ct. 548, 38 L.Ed. 331.

At common law the riparian owner acquires title to additions thereto by accretion. Oklahoma v. Texas, 268 U.S. 252-256, 45 S.Ct. 497, 69 L.Ed. 937; 56 Am.Jur. 892, Note 18; page 901, Sec. 490; page 895, Note 20.

Even if defendants had shown that debris had been deposited artificially in such quantities as to increase the deposit by accretion, it would nevertheless have been immaterial as the riparian owner had no part in making the artificial deposits. St. Clair County v. Lovingston, 23 Wall. 46-66, 23 L.Ed. 59; Jackson v. United States, 9 Cir., 56 F.2d 340; Forgeus v. Santa Cruz County, 24 Cal.App. 193, 140 P. 1092; Adams v. Roberson, 97 Kan. 198, 155 P. 22; Tatum v. St. Louis, 125 Mo. 647, 28 S.W. 1002; Frank v. Smith, 138 Neb. 382, 393 N.W. 329, 134 A.L.R. 458-468; Re Neptune Avenue, 238 App.Div. 839, 262 N.Y.S. 679; Re Hutchinson River Parkway Extension, Sup., 14 N.Y.S.2d 692. Affirmed 285 N.Y. 587, 33 N.E.2d 252; State ex rel. Duffy v. Lakefront East Fifty-Fifth Street Corporation, 137 Ohio St. 8, 27 N.E.2d 485; Gillihan v. Cieloha, 74 Or. 462, 145 P. 1061; Horgan v. Jamestown, 32 R.I. 528, 80 A. 271; City of Memphis v. Waite, 102 Tenn. 274, 52 S.W. 161; 56 Am.Jur., page 899, Note 15e; page 894, note 1.

The defendants do not admit that the South bank of the Chena River was the boundary of the Townsite of Fairbanks, and of plaintiffs' lot, afterwards shown by the Official Survey of L. S. Robe in 1909, and the plat thereof to be Lot 6 in Block 4 of the Fairbanks Townsite, Alaska. This map, plaintiffs' Exhibit "F", shows the Fairbanks Townsite to be bounded by the Chena River on the East and North sides. There is a dotted meander line running from point to point on or close to the bank of the river, and the lots on said meander

1006

line are bounded by the dotted line on that one side, and solid lines on the other three sides.

The rule is quoted from Railroad Co. v. Schurmeir, 7 Wall. 272, 287, 19 L.Ed. 74, in Shively v. Bowlby, 152 U.S. 39, 14 S.Ct. 562: "Meander lines are run in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream, and as the means of ascertaining the quantity of land in the fraction subject to sale, and which is to be paid for by the purchaser. In preparing the official plat from the field notes, the meander line is represented as the border line of the stream, and shows, to a demonstration, that the water course, and not the meander line as actually run on the land, is the boundary."

In Whitaker v. McBride, 197 U.S. 510-512, 25 S.Ct. 530, 531, 49 L.Ed. 857, it is stated: "A meander line is not a line of boundary, but one designed to point out the sinuosity of the bank or shore, and a means of ascertaining the quantity of land in the fraction which is to be paid for by the purchaser."

To the same effect are: 8 Am.Jur. 76; 11 C.J.S., Boundaries, § 30, p. 573, Note 79.

The water and not the meander line is the boundary. Horne v. Smith, 159 U.S. 40, 42, 15 S.Ct. 988, 989, 40 L.Ed. 68, in which the Court said: "The basis of this contention is the familiar rule that a meander line is not a line of boundary, and that a patent for a tract of land bordering on a river conveys the land, not simply to the meander line, but to the water line, * * *".

In Mitchell v. Smale, 140 U.S. 406, 11 S.Ct. 819, 422, 35 L.Ed. 442, the court held, as to a non-navigable lake, page 414: "It has been decided again and again that the meander line is not a boundary, but that the body of water whose margin is meandered is the true boundary."

In Hilt v. Webber, 252 Mich. 198, 233 N.W. 159, 71 A.L.R. 1238, it was held that the boundary line of riparian owners along the Great Lakes is the waters' edge, and not the meander line. The riparian owner has the right to accretion.

The witness, Fred Parker, one of plaintiffs' predecessors in interest, testified that he and Charles Carroll purchased the lot in May, 1903, for a site for a saw mill; that the lot ran along the South bank of the Chena River for more than 100 feet and extended back from the river some seventy feet; that they built a slip from the top of the river bank down way below the water line so that they could pull the logs up it at extreme low water and otherwise; that there was a natural eddy in the river at the foot of the slip which made an ideal mill pond. He told of operating said saw mill for the years 1903, 1904, 1905 and perhaps 1906, and that each year the mill pond grew shallower. Other witnesses corrobated Mr. Parker, and no-one contradicted him.

It seems clear, and the Court so holds, that the Chena River was the North boundary of the lot of plaintiffs and their predecessors in interest, and continued to be such North boundary at all times mentioned in this case.

That all of such land formed by accretion was above the normal high water mark was asserted by all the parties to this action and shown by the levels run by the surveyor, and shown on plaintiffs' Exhibit "G". It is also shown by defendants' Exhibit "4", a portion of a tree growing upon the river bank on the ground in controversy.

A deed from Peter Vachon to A. H. Nordale, of date July 14, 1928, plaintiffs' Exhibit "B", expressly describes the North boundary of plaintiffs' lot as being the Chena River.

Plaintiffs' Exhibit "A" (the Trustee's deed or patent), executed March 1, 1922, in favor of Peter Vachon and A. H. Nordale, conveys "Lot 6, Block 4 according to the official plat and survey of said Townsite". As the official survey and plat showed the North boundary of plaintiffs' lot to be the river as mentioned above, and the ground in controversy had been formed gradually and imperceptibly by accretion, it is the property of the plaintiffs, and they are entitled to recover possession thereof from the defendants.

The value of the use of said ground since March 1, 1948, is $25 per month, and

the plaintiffs have been damaged in such amount and may recover the same from the defendants in this action.

Findings of Fact, Conclusions of Law and Judgment accordingly may be drawn.