WILLIAM S. KIRK, DEFENDANT IN ERROR, v. ISABELLA T. DEMPSEY ET AL., PLAINTIFFS IN ERROR.

Submitted March 24, 1913—Decided November 17, 1913.

1. To support a grant from the riparian commissioners, the grantee must be the owner of the *ripa* when it is made.
2. The ordinary high-water line cannot be artificially changed in derogation of the rights of the state, and when such alteration is made by the owner of the fast land, along tidal waters, the high-water line, so far as the state is concerned, remains where it existed prior to such change.
3. Where the owner of land, washed by ordinary tides, fills in the land under water, he is not bound by the new high-water line thus created, but may have a riparian lease based upon the original high-water line as it existed before the extension of the shore line by such filling, and his right to the grant depends upon his ownership of the original *ripa* at the time the grant is made.

On error to Camden County Circuit Court.

For the plaintiffs in error, *Bleakly & Stockwell.*

For the defendant in error, *William Early, D. Trueman Stackhouse, Jr.,* and *Lewis Starr.*

The opinion of the court was delivered by

BERGEN, J.   Alfred Cramer, the owner of a considerable tract of land in the county of Camden, bounding on the Delaware river, which at that point is a tidal stream, caused a map to be made of the land, dividing it into streets and lots; along the immediate river side was protracted a street marked on the map as Delaware avenue.

In the year 1900 the plaintiff entered into a contract with Cramer for the purchase of some of the lots located on the corner of Adams and Thirtieth streets, part of them, adjoining Adams street, being fast land, and part extending into the water of Delaware river.   The lots as described extended from Adams street, bounding on Thirtieth street, about two hundred feet, and were about one hundred feet in width.   The contract required payment of the purchase price in installments, and under it the plaintiff took possession and built a bulkhead on the line of what would have been Delaware avenue if extended, to which his lots, by measurement, reached, and proceeded to fill with earth the space covered by water between the fast land and the bulkhead, so that in 1906 when the payments were completed and Cramer conveyed to the plaintiff the lots contracted for, they were all above water, and the tide, which formerly ebbed and flowed over a portion of the premises included in the deed, was excluded.

In 1908 plaintiff obtained from the riparian commissioners of the state a grant or lease for the land under water in front of his lots, which began eighty-one and sixty-nine hundredths feet from the northwesterly corner of Thirtieth and Adams streets and extended into the river about nine hundred and fifty feet to the exterior wharf line established by the

riparian commissioners.   It ran thence southwest one hundred and one and nine-tenths feet, and from thence extended southeast·a little over eight hundred feet "to the high-water line of the southerly shore of the Delaware river   *   *   * said point being distant one hundred and eighty-two feet northerly from the northerly line of Adams street on a line parallel with and distant one hundred feet westerly at right angles from the westerly line of Thirtieth street;· thence southeasterly along said high-water line to the place of beginning."   Within the description contained in this grant the premises in dispute, now in the possession of the defendants, are located.

Plaintiff brought ejectment for the land in defendants' possession and having recovered a judgment, the defendants bring error.   It is not contested but that the plaintiff must recover on the strength of his title and cannot rely upon the weakness of the defendants' title.

It is urged in support of this writ that the trial court erroneously charged the jury that if any part of plaintiff's land was not covered by ordinary high tide in 1908, the date of his riparian lease, he could not recover, but if it did, then he could.   The error urged is that the condition regarding the flow of ordinary high tide should relate to 1906, the date when plaintiff took title, and that the court should have so charged.   The argument in support of this claim is based upon defendants' insistence, that by filling in to the bulkhead, which was completed in 1906, the plaintiff had extended the high-water line to that point.   This contention overlooks two important factors, the first of which is that plaintiff's deed indisputably carried his title to high-water mark as it existed before the filling, because it undertook to convey not only the fast land but beyond it into tidal waters, and while as to the latter it passed nothing, because Cramer could not convey the land of the state under water, it was efficacious to the extent of grantor's title which was to the original high-water mark, but did not extend beyond the latter point.

The second factor is that plaintiff, being the owner to the original high-water mark, as it existed before the artificial

filling, was entitled to all accretions between 1906 and 1908, the date of his grant, and if there were none, then the original high-water mark would be the same in 1908 as in 1906, but if the high-water line had been extended by accretions during that period, then plaintiff must make it appear that the land which he owned in 1908, when the grant was made by the riparian commissioners, was washed by ordinary high tide. The defendants were not injured by this charge for the jury were distinctly instructed that any filling by the plaintiff beyond ordinary high-water line was a trespass upon the state's property, and that he could not deprive the state of its title by artificially extending his shore line, so the high-water line was either the same in 1908 as in 1906, eliminating artificial extensions, or the change, if any, was the result of accretions to which the plaintiff was entitled as owner of the *ripa*.

On this point we are referred, in the brief of the plaintiffs in error, to the refusal of the court to charge defendants' twenty-first request, which was, "The plaintiff can claim nothing under his lease from the state, dated June 29th, 1908, unless he was the owner of land washed by the ordinary high-water line of the Delaware river adjoining the land under water so leased." We are of opinion that this request was fully covered by the following instructions to the jury, "If any part of Mr. Kirk's land, which faces Delaware avenue, was not covered by the ordinary high tide in 1908, then as to that part this lease does not affect it, and you would have to exclude it from your verdict in his favor, if you find there was any that was not covered by ordinary high tide when the lease was made." The legal effect of the instructions given by the court, is that the plaintiff must be the owner of the *ripa* when he obtained his grant from the riparian commissioners in 1908, and this is correct, because it is of no consequence where the high-water line was at the time plaintiff obtained his title if he was not the owner to high-water line in 1908 when the grant was made to him by the state. His right to the grant depends, and is conditioned, upon his ownership of the *ripa* when he takes the grant. If for any reason the plaintiff had lost the title between high-water line in 1906 and high-water

line in 1908, manifestly he could not recover, but there is nothing in this case which shows any such condition, and the court left to the jury the question whether in 1908, when the plaintiff obtained his grant from the riparian commissioners, the land which he owned was washed by ordinary high tide.

It is also urged that there was error in refusing to charge as requested, "You are to say from the evidence where the high-water line was in February, 1906, when Kirk took his ·deed from Cramer. If that high-water line, as it naturally existed, without interference from Kirk or others, lay outside of Kirk's lots, then he cannot lawfully claim this land in dispute." This was properly refused because it is immaterial where the high-water line was when plaintiff obtained his title in 1906, if in fact he was the owner of the *ripa* when the lease was made to him in 1908, because he could not be the owner of the *ripa* in 1908 if the high-water line lay outside of his lots, and if in 1906 the line was beyond his land, it would remain so in 1908, unless by erosion it had been removed so that ordinary high tide washed plaintiff's lots. The validity of his lease depended upon ownership of the land washed by the tide in 1908 when the lease was made, and not upon conditions existing in 1906. He must be the owner to high-water line when he takes his grant from the state, and whether he was or not was a jury question properly submitted to them. His right to maintain his grant against one whose land, bounding on high water, has been washed away so that he becomes the owner of the *ripa*, and the submerged land subsequently emerges, is not a question which arises in this case.

We are referred to *Ocean City Association* v. *Shriver*, 35 *Vroom* 550, from which it is argued that the conditions existing when the deed is given is controlling rather than those present when the riparian grant is made, but we think that the plaintiff in error misapprehends the principle laid down in that case, for there the grantor of Shriver never conveyed to high-water mark, and Shriver's grant was rested upon the ownership of a *ripa* caused by erosion, which had carried away all of the land retained by his grantor between his prem-

iscs and the high-water line. The submerged premises subsequently emerged and Shriver, having obtained a riparian grant while the lands of the association were submerged, claimed to own the restored property by virtue of his riparian grant, and in determining the legality of this claim, this court held that Shriver's right depended, under the circumstances, upon the ownership of the *ripa* in 1884, when the association conveyed to Shriver's grantor, while in the case under consideration the grantee's deed carried his title to the high-water line as it originally existed.

It is next urged that the court was in error when it refused a motion for the direction of a verdict in favor of the defendants below, upon the ground, as it appears in the brief of plaintiff in error, "that under the undisputed facts the artificial high-water line illegally created by the plaintiff, Kirk, as it existed February 17th, 1906, when he took his deed from Cramer, was, undoubtedly, as far as the *locus* is concerned, in the public highway known as Delaware, or Farragut avenue." In support of this, it is argued "that if the ordinary high-water line be obliterated by the wrongful act of the plaintiff, and the actual high-water line, as it then exists under a condition created by him, be against the claim of property then being made by him, he is estopped from claiming that the original high-water line, which he obliterated, was in a position more beneficial to him than the artificial line created by him." The manifest answer to this is that the plaintiff could not by any act in the nature of a trespass change the right of the state to land below the natural high-water line by obliteration of the old and the establishment of a new line; the bulkhead erected by him was an unlawful act if intended for such a purpose and could not deprive the state of its title, nor did it prevent the state from subsequently granting to the plaintiff its riparian right from the original high-water line as it existed before it was artificially extended by the plaintiff. The refusal to direct a verdict on this ground was not error.

The next point raised is that the plaintiff should be held to the high-water line as it actually existed February 17th, 1906, whether that high-water line was artificially created or

not. "It was the then high-water line, in any event." This raises substantially the same question which has been considered. The plaintiff in error argues that if the plaintiff artificially created a high-water line, he is bound by such line as it existed when he obtained his deed, although made by him in derogation of the rights of the state. It is enough to say that the high-water line resulting from the artificial filling by the plaintiff was not, as against the state, "the then high-water line." The high-water line was where it would have naturally existed if the plaintiff had not undertaken to alter it by artificial means.

The next point urged is that "in view of the fact that the high-water line from the evidence of both sides was admittedly a curved line, and in view of the fact that there was considerable dispute as to whether it entered Farragut avenue south or west of Thirtieth street at a point clear of Kirk's lots or at a point somewheres on Kirk's lots, there was a question to be submitted to the jury which might have resulted in the defendants securing by the verdict of the jury a portion of the land in question." The quotation from the charge of the court found in the earlier part of this opinion fully complies with this request. The jury were then told that if any part of the land was not covered by high tide, when the lease was made, it did not affect such portion, and the jury should exclude it from their verdict.

The next point is the refusal of the trial court to admit in evidence a plan or map on file in the office of the register of deeds, "showing the lay out of the lots and tracts in the vicinity of the *locus* and the *locus* itself." This map, so far as we can gather from the record, did not show the high-water mark or afford any evidence upon the question in dispute. It was simply a map of a tract of land showing lots and streets none of which was disputed, but it did not show where the high-water line was located, which was the only issue being tried. The map was not relevant to the issue and therefore its exclusion was not error.

Finding no error in this record, the judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, VREDENBURGH, CONGDON, WHITE, TERHUNE, HEPPENHEIMER, JJ. 14.

*For reversal*—None.