92 N.J. Super. 53 (1966)
222 A.2d 138
BOROUGH OF WILDWOOD CREST, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
CHARLES MASCIARELLA AND MARGARET MASCIARELLA, HIS WIFE; RALPH JOHNSON AND VERA JOHNSON, HIS WIFE; WILLIAM EARL JOHNSON AND BERTHA JOHNSON, HIS WIFE; ROBERT E. KAY AND ADALENE W. KAY, HIS WIFE; VELMA M. DARE; DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT OF THE STATE OF NEW JERSEY AND THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 19, 1966.
*55 Mr. J.W. Acton for plaintiff, now deceased.
Mr. Nathan C. Staller for defendants Charles Masciarella and Margaret Masciarella, his wife; Ralph Johnson and Vera Johnson, his wife, and William Earl Johnson and Bertha Johnson, his wife.
Mr. Robert E. Kay, pro se, for defendants Robert E. Kay and Adalene W. Kay, his wife (Messrs. Kay & Corino, attorneys).
Mr. Arthur J. Sills, Attorney General of New Jersey, for defendants Department of Conservation and Economic Development of the State of New Jersey and the State of New Jersey (Mr. Michael C. Rudolph, Deputy Attorney General, of counsel).
WICK, J.S.C.
This matter is in the nature of a declaratory judgment proceeding wherein plaintiff Borough of Wildwood Crest (hereinafter referred to as the borough) seeks to have this court determine and declare the rights of the parties hereto with reference to the title to lands formed by accretion.
On April 30, 1908 and August 3, 1915 the State of New Jersey (hereinafter referred to as the State), by its Governor, Riparian Commissioners and the Board of Commerce and Navigation, conveyed all its right, title and interest in certain lands under water, subject to certain terms and conditions, to the Wildwood Crest Company, its successors and assigns. This riparian grant was made pursuant to L. 1871, c. 256, now N.J.S.A. 12:3-10, which provides:
"Any riparian owner on tidewaters in this State who is desirous to obtain a lease, grant or conveyance from the State of New Jersey of any lands under water in front of his lands, may apply to the board, *56 which may make such lease, grant or conveyance with due regard to the interests of navigation, upon such compensation therefor, to be paid to the State of New Jersey, as shall be determined by the board, which lease, conveyance or grant shall be executed as directed in sections 12:3-2 to 12:3-9 of this Title, and shall vest all the rights of the State in said lands in said lessee or grantee."
The second course in this riparian grant extended 1,000 feet to the exterior line of the Atlantic Ocean, as established by the riparian commissioners. The grant expressly conferred the right to appropriate the lands under water to the exclusive private use of the grantee.
Under the terms of the riparian grant the State reserved the right to "change the exterior lines for solid filling and piers, and fix the same further from the shore than formerly." If the exterior lines were changed accordingly, the grantee, or anyone claiming under the grant, was given the exclusive right to apply for and receive a lease or grant of the additional land under water lying between the former exterior line and the new exterior line.
Thereafter, by mesne conveyances, title to a portion of the lands abutting on the ocean, together with all riparian rights, vested in William Earl Johnson and Ralph Johnson, by deed dated September 14, 1953; in Charles Masciarella and Margaret Masciarella, his wife, by deed dated February 25, 1964, in Robert E. Kay and Adalene Kay, his wife, by deed dated May 15, 1956, and in Theo Dare, by deed dated May 25, 1954. Theo Dare died testate, devising all his right, title and interest in the property to Velma M. Dare, his widow.
The complaint alleges that since 1915 lands have steadily accreted to the upland owned by defendants Masciarella, Johnson and Kay (hereinafter collectively referred to as the upland owners). The action has been dismissed insofar as defendant Velma Dare is concerned. The borough contends that the accretion was caused by the erection by the United States Government of stone jetties at Cold Spring Inlet in 1911 and by the closing of Turtle Gut Inlet in 1917.
The upland owners claim to own the lands which have accreted to the upland of their respective holdings. The State *57 claims that the accretion was artificially made and, therefore, that title to the land beyond the exterior line of the 1915 riparian grant is vested in it. The borough, as plaintiff, supports this contention, but claims that title to the accreted lands is vested in it rather than the State, by virtue of L. 1942, c. 345.
All parties, through their respective attorneys, have entered into a stipulation of facts. Paragraph 12 of that stipulation provides:
"By Chapter 345 of the Laws of 1942, the Legislature of the State of New Jersey established the Eastwardly territorial limits of the Borough of Wildwood Crest as the low water line and all the land lying oceanward of said low water line and extending southeasterly therefrom to any present or future exterior line in the Atlantic Ocean heretofore or hereinafter established by the Riparian Commission of the Board of Commerce and Navigation of the State of New Jersey."
In conveyances of land along the seashore, the grantee takes with knowledge of changes to which the shore is subject. He takes no fixed freehold, but one that shifts gradually with the changes that take place. Camden and Atlantic Land Co. v. Lippincott, 45 N.J.L. 405 (Sup. Ct. 1883); Harz v. Board of Commerce and Navigation, 126 N.J. Eq. 9 (Ch. 1939), affirmed 127 N.J. Eq. 341 (E. & A. 1940). Where there is erosion, the riparian or littoral owner loses his title to the State. Leonard v. State Highway Department, 29 N.J. Super. 188 (App. Div. 1954). On the other hand, it is unquestioned that gradual, imperceptible accretions which add to the upland inure to the benefit of the owner of the land bounded upon the sea. Camden and Atlantic Land Co. v. Lippincott, supra, 45 N.J.L., at p. 417. Harz v. Board of Commerce & Navigation, supra, 126 N.J. Eq., at p. 16; Ocean City Association v. Shriver, 64 N.J.L. 550, 557 (E. & A. 1900); 4 Tiffany, Real Property, (3d ed. 1939), § 1219 and 2 Walsh, Commentaries, Law of Real Property, § 227 (1947). The doctrine whereby title is acquired by accretion is founded on the principle of compensation. The proprietor of lands having a boundary on the sea *58 is obliged to accept the alterations of his boundary by the changes to which the shore is subject. As he is subject to loss by erosion, for which loss he is without remedy, he is entitled to the gain which may arise from the alluvial formations. Ocean City Association v. Shriver, supra, 64 N.J. Eq., at p. 555, Camden and Atlantic Land Co. v. Lippincott, supra, 45 N.J.L., at p. 417, and Walsh, supra. Another reason for the rule is founded in a sound policy of preserving the valuable right of access to the sea. Walsh, supra.
In the present case there is no dispute concerning the rate of accretion. Paragraph 11 of the stipulation of facts provides that the area in question has gradually and imperceptibly accreted above high water from August 3, 1915. However, the State and the borough contend that although the accretion did occur gradually and imperceptibly, the alluvion formed by it did not inure to the benefit of the upland owners because the accretion was caused artificially. The State and the borough contend that gradual and imperceptible accretion inures to the benefit of the upland owner only when the accretion is natural. It is true that in the case of Seacoast, etc., Co. v. American Timber Co., 92 N.J. Eq. 219, 221 (E. & A. 1920), it was said that in order for the riparian owner to be entitled to be compensated by gain from accretion, the accretion must be by natural forces or by lawful acts. However, it is the opinion of this court that Seacoast does not require a finding in this case that the upland owners are not entitled to the area formed by accretion, if the accretion was artificially caused. That case is factually distinguishable from this one. Seacoast dealt with a matter of accounting connected with a mortgage foreclosure, and an attempted charge by a mortgagee in possession against a mortgagor. The United States Government had built crib work and a dike. The dike fell into a state of disrepair and was not maintained or repaired by the Government. The mortgagee, who had gone into possession, repaired the dike for $18,000. The court was convinced that the repairs to the dike were made in an effort to acquire title to land not covered by the *59 mortgage. 92 N.J. Eq., at p. 222. The court then framed the issue before it as follows:
"* * * whether a mortgagee in possession can charge a mortgagor with money unlawfully spent in an effort to acquire title contrary to law to land not covered by the mortgage, from which the mortgagor or mortgagee may at once be legally ejected. * * *"
The court held that the cost of the work was not chargeable to the mortgagor. Ibid, at p. 223.
Even if that case, despite its factual distinction, is authority for a general rule of law that artificial accretions do not inure to the benefit of the upland landowner, there is another factor distinguishing it from the present one. The reason behind the Seacoast decision was that the court was of the opinion that the sole purpose of the mortgagee in repairing the dike was to make land of what otherwise would have been tidal land of the State, and felt that no landowner should be able to enlarge his estate artificially at the expense of the State. Ibid, at p. 222. This is in line with the weight of authority holding that the owner of land abutting on the water cannot himself extend its limits by producing a condition which causes an accretion to his lands. Tiffany, op. cit., § 1223; Kirk v. Dempsey, 85 N.J.L. 304 (E. & A. 1913). In the case sub judice there is no evidence that, even if the accretions were in fact artificially caused, they were caused by the upland owners. In fact, paragraph 3 of the stipulation of facts indicates that the stone jetties at Cold Spring Harbor were constructed by the United States Government, and paragraph 5 of that stipulation indicates that Turtle Gut Inlet was presumably closed by the United States of America through its army engineers.
Since there are no cases in New Jersey holding that artificially caused accretion inures to the benefit of the State rather than the upland owner, this court must treat the case as one of first impression in New Jersey.
By the almost universal weight of authority in other jurisdictions it is held that gradual, imperceptible accretions inure *60 to the benefit of the adjoining owner of the land, regardless of whether the accretion is artificial or natural. The result as to the ownership in either case is the same. The riparian or littoral right to future alluvion is a vested one which is an inherent and essential attribute of the original property. County of St. Clair v. Lovingston, 90 U.S. 46, 68, 23 L.Ed. 59 (1874); Nordale v. Waxberg, 12 Alaska 399, 84 F. Supp. 1004 (D.C. 1949), affirmed 12 Alaska 695, 182 F.2d 1022 (9 Cir. 1950); Littlefield v. Nelson, 246 F.2d 956 (10 Cir. 1957); Brundage v. Knox, 279 Ill. 450, 117 N.E. 123 (Sup. Ct. 1917); Michaelson v. Silver Beach Improvement Ass'n, Inc., 342 Mass. 251, 173 N.E.2d 273 (Sup. Jud. Ct. 1961); Tatum v. City of St. Louis, 125 Mo. 647, 28 S.W. 1002 (Sup. Ct. 1894); Adams v. Roberson, 97 Kan. 198, 155 P. 22 (Sup. Ct. 1916); Frank v. Smith, 138 Neb. 382, 293 N.W. 329, 134 A.L.R. 458 (Sup. Ct. 1940); State v. 60 Acres of Land, 101 N.H. 228, 139 A.2d 75 (Sup. Ct. 1958); City of Missoula v. Bakke, 121 Mont. 534, 198 P.2d 769 (Sup. Ct. 1948), and Tiffany, op. cit., § 1223, p. 626. The proximate cause is the deposits made by water. The law looks no further. Whether the flow of the water is natural or affected by artificial means is immaterial. County of St. Clair v. Lovingston, supra, 90 U.S., at p. 66.
Only in California is a different result found. There it is held that
"* * * Where, however, the accretions have resulted, not from natural causes, but from artificial means, such as the erection of a structure below the line of ordinary high water, there is made out a case of purpresture, or encroachment, and the deposit of alluvion caused by such structure does not inure to the benefit of the littoral or upland owner, but the right to recover possession thereof is in the state or its successor in interest, as the case may be. * * *"
City of Los Angeles v. Anderson, 206 Cal. 662, 275 P. 789, 791 (Sup. Ct. 1929). This was later distinguished in the case of Carpenter v. City of Santa Monica, 63 Cal. App.2d 772, 147 P.2d, 964 (D. Ct. App. 1944), where it was stated that in Anderson the accretion was perceptible, rather than gradual. *61 However, in Carpenter, 147 P.2d, at p. 975, it was held that where gradual, imperceptible accretion is caused entirely by artificial means, the alluvion formed by it belongs to the state, rather than the upland owner. The reason given by the California court for that rule was that a contrary rule would cut off the power of the municipality to improve its harbors unless the accreted areas were condemned.
"* * * It would mean that every time the state or its grantee determined to build a wharf or pier, or to grant a permit or franchise for such construction, it would be granting away a material portion of the tide lands along the entire bay that might later be covered by artificial accretions. Such a rule would mean that the state or its grantee [would] thus grant into private ownership tide lands which it holds under an irrevocable trust." (at p. 975)
The court in Carpenter expressly reserved the question of what the rule should be where the accretions are the result of both natural and artificial causes. California has subsequently held that alluvion resulting from a gradual and imperceptible accretion belongs to the upland owner where the alluvion has resulted from a combination of natural and artificial causes. Abbot Kinney Company v. City of Los Angeles, 340 P.2d 14 (Cal. D. Ct. App. 1959).
This court is of the opinion that the better rule is that alluvion formed by gradual and imperceptible accretion, whether caused in whole or in part by artificial means, inures to the benefit of the upland owner. Regardless of the cause of the accretion, if the upland owner is deprived of the alluvion he is deprived of his previously unrestricted right of access to the ocean. Moreover, as the upland owner assumes the risk of losing land due to the process of erosion, he must also be entitled to the gain caused by accretion. This is not a question of a windfall gained at the expense of the State. Rather, it is a promulgation of a principle of fundamental fairness in preserving to the upland owner his right of access to the sea and compensating him for loss, past or future, due to the process of erosion.
*62 This court would only impose two limitations on this rule. First, artificial accretions which are caused solely by the act of the upland owner should not inure to his benefit, for the upland owner should not be permitted to enlarge his own estate at the expense of the State. However, if alluvion is formed artificially and not by his direction, he should be entitled to its benefit. Second, if a project is undertaken by the State or any governmental agency in aid of navigation, and it is essential that the State or agency thereof have the benefit of the alluvion formed by the accretion in order to realize the goal undertaken by the project, it must be held that the private rights yield to the interest of the public. See Michaelson v. Silver Lake Beach Improvement Ass'n, Inc., supra, 173 N.E.2d, at p. 277. On the other hand if the alluvion formed is merely a by-product of the project and is not needed by the State in order to aid navigation, it should still inure to the benefit of the upland owner despite the fact that the purpose of the project was to encourage or aid navigation.
However, in this case the court need not go that far, for there is insufficient evidence to satisfy it that the accretion was due entirely to artificial means. Admitted into evidence were the depositions of Dr. Horace G. Richards, produced by the upland owners, and of Clarence F. Wicker, produced by the State. Neither expert would state that the accretion was caused entirely by artificial means. Dr. Richards testified that the basic factors influencing shore changes are changes of sea level, movement of land, and local changes caused by shore currents, storms, waves, etc. He further testified that the large degree of accretion in Wildwood Crest was caused by shore current and waves. He did admit that the Cold Spring jetties had a part in the accretion, but he would not state that these jetties were the sole cause of the accretion because a similar amount of accretion took place long before the jetties were constructed, although he did state that he would not deny that the jetties had something to do *63 with it. He refused to say what was the major cause of the accretion.
Mr. Wicker testified that the factors causing accretion and erosion along the Atlantic Coast are sand supply, wave characteristics, wave current, littoral drift, sand size, wind, inlets, tides, and man-made factors such as jetties and groins. Nowhere in his deposition did Mr. Wicker take the position that the accretions were due solely to artificial means. Rather, he stressed the fact that all these factors contributed to the accretion.
This court cannot find from the evidence presented that the accretion was caused by artificial means. The evidence does not even call for a conclusion that the major factor causing the accretion was the artificial means. Therefore, it must be held that the accretion was caused by a combination of natural and artificial causes. Consequently, even if this court felt that a distinction should be drawn between accretion caused by natural means and accretion caused by artificial means, it could not determine, in this case, that the accretion was caused by artificial means.
Both the State and the borough contend that where the rights of the State are involved, the distinction between natural and artificial accretion is significant. Although it is true that it is occasionally held that this distinction is pivotal, Carpenter v. City of Santa Monica, supra, and Gillihan v. Cieloha, 74 Or. 462, 145 P. 1061 (Sup. Ct. 1915), where the question was expressly left open, the better view would seem to be that the fact that the State, rather than a private landowner, is claiming the benefits of the accretion should not change the result. Adams v. Roberson, Michaelson v. Silver Beach Improvement Ass'n, Inc., Brundage v. Knox, and State v. 60 Acres of Land, supra. Even though the State, rather than a private party, is the adverse claimant, the same compelling reasons of compensation for possible or actual loss by erosion and preservation of the right of access to the sea require a resolution of the controversy in favor of the upland owner, subject only to the rights of the State to *64 the alluvion when it is caused by artificial means constructed by the State or its agents in furtherance of a project in aid of navigation, and it is essential that the alluvion be vested in the State in order to complete and maintain the project.
The upland owners claim that the riparian grants of 1908 and 1915 also entitled them to the alluvion formed by the accretion. The riparian grant made pursuant to L. 1871, c. 256, now N.J.S.A. 12:3-10, is a grant of lands under water, and the title acquired by a riparian grant under the statute differs in every respect from the title of a riparian owner in alluvion.
"The latter comes to him by virtue of his title to land bounded by a stream, and belongs to him because it is within the description of his original grant; but the title under the New Jersey grants is not only of a new estate, but in a new subject divided from the upland or riparian property by a fixed and permanent boundary." City of Hoboken v. Penna. Railroad Co., 124 U.S. 656, 690, 8 S.Ct. 643, 654, 31 L.Ed. 543 (1887).
The statute was enacted to recognize the right of the grantee to wharf out or reclaim the land under water. See Bailey v. Driscoll, 34 N.J. Super. 228, 247-253 (App. Div. 1955), reversed in part on other grounds, 19 N.J. 363 (1955). If the only source of title to the alluvion was the riparian grant, the outward extent would be limited by the exterior lines established or to be established by the State. Bailey v. Driscoll, 19 N.J. 363 (1955). However, this court finds that the rights of the upland owners to the alluvion are established independently of the riparian grants, since the accretion was gradual and imperceptible and was not caused by the upland owners and was not caused by artificial means.
Since this court has determined that the upland owners are entitled to the benefit of the accretion, it need not determine whether the borough, by virtue of L. 1942, c. 345, is vested with title to the accreted lands over the claim of the State.